## WELLES *v.* GRAVES *et al.*

(*Circuit Court, N. D. Iowa, E. D.* February 24, 1890.)

1. NATIONAL BANKS—UNLAWFUL DIVIDENDS—LIABILITY OF DIRECTORS.
   The personal liability of directors of a national bank for violation of Rev. St. U. S. § 5204, by declaring dividends in excess of net profits, and of section 5200, for loaning to separate persons, firms, or corporations amounts exceeding one-tenth of the capital stock, cannot be enforced in an action at law.

2. SAME—RIGHT OF COMPTROLLER TO AUTHORIZE SUIT.
   Under Rev. St. U. S. § 5239, providing that, if the directors of a national bank shall violate any of the provisions of the title relating to the organization and management of banks, the franchises of the bank shall be forfeited, such violation, however, to be determined by a proper court of the United States in a suit therefor by the comptroller, and that in cases of such violation every director participating

therein shall be personally liable for all damages which the bank, its shareholders, or any other person shall have sustained in consequence thereof, the comptroller cannot authorize the receiver to bring suit, under section 5234, to enforce such personal liability, until it has been adjudged by a proper court that such acts have been done as authorize a forfeiture of the charter.

3. SAME—LIMITATION OF ACTIONS.
   The forfeiture of the rights, privileges, and franchises of a bank authorized by Rev. St. U. S. § 5239, for violation by its directors of the provisions of the banking act, comes within section 1047, limiting suits for any penalty or forfeiture, accruing under the laws of the United States, to five years.

4. SAME.
   If the personal liability imposed by Rev. St. U. S. § 5239, upon directors for violation of the provisions of the banking act, in favor of any one injured thereby, can be enforced without reference to whether the charter has been forfeited or not, it is not a penalty, within the meaning of section 1047, limiting actions for penalties to five years.

5. SAME—STATE STATUTE.
   The provisions of a state statute of limitations do not apply to a liability created by act of congress, unless so provided by congress.

At Law. On demurrer to petition.
*William Graham* and *Thomas Updegraff*, for plaintiff.
*McCeney & O'Donnell*, for defendants.

SHIRAS, J. This is an action at law brought by the plaintiff as receiver of the Commercial National Bank of Dubuque, Iowa, against the former directors thereof, under the provisions of section 5239 of the Revised Statutes of the United States. The first count in the petition avers that the said bank was organized under title 62 of the Revised Statutes; that it became insolvent, and on the 20th day of May, 1888, it closed its doors, and ceased to do business; that on the 2d day of April, 1888, the comptroller of the currency duly appointed the petitioner receiver of said bank; that the capital stock was $100,000; that the liabilities of said bank are largely in excess of its assets; that the action is brought under the direction and by the authority of the comptroller of the currency; that on the 1st day of January, 1882, the defendants, composing the board of directors, declared and caused to be paid to the stockholders of said bank a dividend of 5 per cent. upon the capital stock, amounting to the sum of $5,000; that at said date the said bank had sustained losses exceeding its undivided profits then on hand; that the bad debts due the bank exceeded the net profits of said bank then on hand at the date of said dividend; which fact was well known to the directors, the defendants herein; that each of the defendants participated in and assented to the making of said dividend, and the violation of section 5204, and that thereby the said sum of $5,000 was wholly lost to said banking association and its creditors, to their damage in the sum of $5,000. The second, third, fourth, fifth, sixth, seventh, eighth, and ninth counts are in similar form, being based upon the semi-annual dividends of 5 per cent. declared on the 1st days of July and January in the succeeding years, down to and including the 1st day of January, 1886. The remaining counts of the petition, 46 in number, are based upon violations of section 5200 of the Revised Statutes, which provides that the liabilities of any one person, company, corporation, or firm, for money borrowed, shall not exceed, at any one time, one-tenth part of the capital stock of the

corporation actually paid in; it being averred in each count that, by reason of the special loan described in such count, the liability of the named borrower was thereby increased to an amount exceeding one-tenth part of the capital stock of the bank, the same being done with the assent of the defendants as directors, to the damage of the bank, its creditors and shareholders. To this petition a demurrer is interposed upon three grounds, the first being that the facts disclosed upon the face of the petition show that an action at law cannot be maintained thereon, the remedy being by a bill in equity.

Under the counts charging a violation of the provisions of section 5204 in regard to declaring dividends, the principal matters to be investigated are the amount of losses and bad debts, as compared with the net profits on hand at the respective times the several dividends were declared; whether there were then creditors of the bank who remain such at the present time, and, if so, the damage caused to them by the payment of the dividends wrongly declared. Under the petition in this case, the condition of the bank, the question of the relative proportion of the profits and assets to the indebtedness, the question of who were creditors, the amounts due them, and the damage caused them, would have to be ascertained at nine different periods or times. Under the counts charging violations of section 5200 of the Revised Statutes in loaning to one person, firm, or corporation amounts exceeding one-tenth of the capital stock, the condition of the accounts, and the nature of the indebtedness of the different parties named, must be investigated. Not only so, but it must be ascertained which of the defendants assented to each excessive loan, and the damage caused thereby to creditors must be properly traced out. That the investigations necessary to be made in support of the several counts of the petition cannot be properly and understandingly made before a jury is too plain to demand more than the mere statement of the fact. Not only so, but the defendants have the right to demand that the question of their liability, and the amount thereof, shall be settled and determined in one proceeding, which shall be of such a nature as to bind the receiver, the association, the shareholders, and the creditors. This cannot be done in a court of law, and hence there exists good ground for the exercise of equitable jurisdiction. The principle governing this case is laid down by the supreme court in *Hornor* v. *Henning*, 93 U. S. 228, which case arose under the provisions of the act of congress of May 5, 1870, authorizing the formation of corporations in the District of Columbia, which provides that, "if the indebtedness of any company organized under this act shall at any time exceed the amount of its capital stock, the trustees of such company assenting thereto shall be personally and individually liable for such excess to the creditors of the company." The supreme court held that, to enforce the liability of the trustees for excessive indebtedness, the proceeding must be in equity, using the following language:

"The remedy for this violation of duty as trustees is in its nature appropriate to a court of chancery. The powers and instrumentalities of that court enable it to ascertain the excess of the indebtedness over the capital stock; the

amount of this which each trustee may have assented to, and the extent to which the funds of the corporation may be resorted to for the payment of the debts; also the number and names of the creditors; the amount of their several debts; to determine the sum to be recovered of the trustees, and apportioned among the creditors, in a manner which the trial by jury and the rigid rules of common-law proceedings render impossible. This course avoids the injustice of many suits against defendants for the same liability, and the greater injustice of permitting one creditor to absorb all or a very unequal portion of the sum for which the trustees are liable, and it adjusts the rights of all concerned on the equitable principles which lie at the foundation of the statute."

In *Stone* v. *Chisolm*, 113 U. S. 302, 5 Sup. Ct. Rep. 497, the doctrine thus announced is reaffirmed and applied to a case arising under a statute of the state of South Carolina declaring that "the total amount of debts which such corporations shall at any time owe shall not exceed the amount of its capital stock actually paid in; and, in case of excess, the directors in whose administration it shall happen shall be personally liable for the same, both to the contractor or contractors and to the corporation." It was held that to enforce the liability thus created an action at law would not lie, the only remedy being by a suit in equity. The reasons assigned for the conclusion reached in these cases apply with equal force to the present proceeding, and are conclusive of the question of the form of the remedy. The ascertainment of the various matters of fact inhering in the question of the liability of the defendants, and the extent thereof, requires the aid of a court of equity, as in a court of law such investigation could not be properly had. The second ground of demurrer presents the question whether, under the provisions of section 5239 of the Revised Statutes, the receiver can proceed against the directors for the purpose of enforcing the personal liability created by the section, unless it be shown that, in a proper proceeding brought by the comptroller, it has been judicially determined that the directors have done, or permitted to be done, acts justifying the forfeiture of the charter of the association. The section reads as follows:

"If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate, any of the provisions of this title, all the rights, privileges, and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper circuit, district, or territorial court of the United States, in a suit brought for that purpose by the comptroller of the currency, in his own name, before the association shall be declared dissolved; and, in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation."

Title 62 of the Revised Statutes, which is the one referred to in the section above quoted, includes the various provisions of the statute regulating the organization and management of national banks. In the sections of the title many acts are forbidden, and the doing of many things is enjoined; and if it be true, according to the contention of plaintiff, that section 5239 is to be construed literally, and be held to confer

upon the association, its shareholders or any other person, the right to sue the directors, or any of them, in any court, for an alleged violation of any of the provisions of the title, then, indeed, the position of a director in a national bank is certainly not a desirable one. If there is no limitation upon the right to sue the directors under section 5239, then any one, claiming to have been damaged, may initiate proceedings in any court against the directors for an alleged violation of any of the provisions of title 62, even though the bank continues in operation and is entirely solvent. Not only so, but such suit, if the damages claimed are not too large, may be brought in a justice's court; for national banks are, by the act of August 13, 1888, placed on the same footing, so far as jurisdiction of the state courts is concerned, with citizens of the state wherein they are located; and certainly the directors cannot claim an exemption in this regard not open to the bank itself. It cannot be possible that it was the intent of congress to subject the directors of national banks to the liability to be called to account in actions at law brought before a justice of the peace, and to have determined by a jury the question whether excessive dividends were declared, or whether loans in excess of the proper amount were made, or whether violations have occurred of any of the numerous provisions of title 62, and to have ascertained the damages caused thereby to the particular plaintiff bringing the action. But it is argued, if this extreme view of the liability created by the section cannot be sustained, that upon the appointment of a receiver he has vested in him the right to bring actions at law for the enforcement of the liability in question; that he becomes the trustee or representative of the association, of the shareholders and of the creditors, and can call the directors to account for the alleged violations of the statute. The fact that the action is in the name of the receiver does not obviate the difficulties in the way of trying such questions before a jury in a law action, whether pending in a court of record or before a justice of the peace. Assume, however, that the suit is brought in equity by the receiver, can the same be maintained, unless it be averred and shown that it is based upon a judgment of forfeiture rendered by a court of competent jurisdiction? To illustrate the point, suppose it is charged that the directors have violated title 62 by declaring one wrongful dividend, and by making one loan in excess of one-tenth part of the capital stock. The receiver sues the directors in a state court to recover the damages caused thereby. At the same time the comptroller brings a proceeding for the forfeiture of the franchise of the bank in the proper United States court. In the state court the receiver recovers; that court holding that the dividend had been wrongfully declared, and the excessive loan had been made. In the United States court the comptroller fails to make out his case, it being proven that the dividend was rightfully made, and that in fact the alleged excessive loan was not excessive. Are the directors to be compelled to pay the damages awarded against them in the state court, under such circumstances? Suppose the comptroller brings a proceeding to forfeit the charter upon certain specified acts alleged to be violations of title 62, and, after a full hearing in the proper United States

court, the judgment goes for the defendant. Then suppose the receiver brings suit to recover on the same specified acts against the directors, on the ground that these acts have been committed, and are in violation of title 62, and the directors plead as a defense the adjudication in the forfeiture proceedings. Would not such plea be good? The receiver is but the hand of the comptroller, and an adjudication binding the comptroller must surely bind the receiver; and likewise the directors are in privity with the corporation; so that it must follow that when, in a given proceeding brought by the comptroller, it has been adjudged that certain acts are not in violation of any provision of title 62, so as to justify the forfeiture of the charter of the bank, such adjudication must bind the receiver, acting under the comptroller, and estop him from counting on the same acts as grounds for recovery against the directors.

If this be true, is it not a strong argument in support of the proposition that an adjudication by the proper court, forfeiting the charter, is a necessary prerequisite to the maintenance of a suit against the directors, under section 5239? This section forms part of chapter 4, tit. 62, which chapter is headed "Dissolution and Receivership." In it are provided two general modes for winding up the affairs of national banks,—the one being by voluntary liquidation on part of the association; the other by involuntary proceedings under the direction of the comptroller. If proceedings are instituted by the comptroller, and it is found that the ordinary assets are insufficient to pay the indebtedness, then the stockholders may be called upon to pay an amount equal to the face value of the stock held by them, as provided in section 5151; and by section 5234 the receiver is empowered to enforce this liability against the stockholders. In *Kennedy* v. *Gibson*, 8 Wall. 498, it was held that in order to enable a receiver to enforce this liability against the stockholders, it must appear that the comptroller had decided that it was necessary to institute proceedings against the stockholders to enforce their personal liability; that the question was referred to his judgment and discretion, and his judgment thereon was conclusive; that the stockholders cannot controvert it, nor could it be questioned in the litigation that might ensue; that this action on his part was indispensable, whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of suit by the receiver. In the petition filed in the case now before the court, it is averred in each count that the action is brought under and by the authority of the comptroller. The point to be decided is whether the comptroller has the right to decide that the directors shall be proceeded against to enforce the liability created by section 5239, until he has, by a proper proceeding in a court of the United States, had it adjudicated that acts had been done which justified the forfeiture of the charter of the bank. It is clear that, under this section, the directors cannot be held liable, except for violation of the provisions of title 62, of such a nature as to justify the forfeiture of the charter; and it is equally clear that the decision of whether violations of this nature have or have not occurred is not intrusted to the comptroller. He cannot determine that question, but he is authorized to bring a proceeding

for the purpose of ascertaining whether such violations have taken place as will justify the forfeiture of the charter, the adjudication to be made by a court of the United States. If the comptroller cannot, for the purpose of forfeiting the charter, decide whether the provisions of the title have or have not been violated by the directors, can he decide the same question in order to determine whether the directors are liable to be proceeded against by the receiver for damages?

The right of the receiver to maintain this action is claimed under the provisions of section 5234, and, as already said, in *Kennedy* v. *Gibson*, the supreme court has ruled that, by the terms of this section, the receiver is the mere instrument of the comptroller, and must show authority from him to institute actions for the collection of the assets and claims of the association. The same limitation must apply to this action, and the receiver cannot maintain the same, except under the direction and authority of the comptroller; and, unless it appears that the comptroller has himself taken the steps imposed upon him by the statute to authorize him to direct the receiver to enforce the liability of the directors, there is a consequent failure to show a right to institute and maintain the action, and the same result must follow as in *Kennedy* v. *Gibson.* As already said, suppose the comptroller in a given case institutes a proceeding in the proper United States court to forfeit the charter of a national bank for certain alleged acts, the bank being wound up under the statutory provisions, and in that proceeding it is adjudged that cause for forfeiture does not exist. Could the comptroller, after such adjudication, authorize and empower the receiver to proceed against the directors to enforce a liability against them based upon the same alleged grounds for forfeiture? I cannot conceive how such a proceeding could be maintained. The statute confers upon the comptroller power to institute proceedings in the proper court for the purpose of obtaining an adjudication upon the question whether the directors have knowingly done or permitted the doing of acts justifying the forfeiture of the charter. If the court adjudges against the forfeiture, it is not within the power of the comptroller to disregard such adjudication, and to authorize the receiver to proceed against the directors. If, however, the court finds that certain acts, justifying the forfeiture of the charter, have been done or permitted by the directors, and awards judgment of forfeiture, then the comptroller can authorize the receiver to proceed against the directors. In such a proceeding, it will not be open to the defendants to question the facts necessarily found and adjudged in the forfeiture case, to-wit, that certain acts were done or certain requirements of the statute were not obeyed, and that the same were causes of forfeiture, and consequently grounds for liability on part of the directors. The questions open to investigation would be as to the assent or participation of the particular directors in the several acts adjudged to be causes of forfeiture, and the amount of damages caused thereby, and recoverable under the statute. As is held in *Pollard* v. *Bailey*, 20 Wall. 520:

"The intention of the legislature, when properly ascertained, must govern in the construction of every statute. For such purpose, the whole statute

v.41F.no.8—30

must be examined. Single sentences and single provisions are not to be selected and construed by themselves, but the whole must be taken together."

When the comptroller, under the powers granted to him by the statute, undertakes the duty of closing up the affairs of an insolvent bank, he is governed and controlled by the entire provisions of the statute, which should receive a harmonious construction, and the powers of the receiver appointed by him are subject to the like limitation. As the right of the receiver to institute any form of proceeding against the directors is based upon the provisions of section 5234, it of necessity follows, under the construction given thereto by the supreme court in *Kennedy* v. *Gibson*, that the receiver acts under the direction of the comptroller; and the latter cannot confer the authority and right to sue except in strict accordance with the provisions of the section creating the liability against the directors; or, in other words, the comptroller cannot authorize the receiver to sue the directors until he has established the fact that acts have been done which justify the forfeiture of the charter. He cannot himself determine this question, but the statute clothes him with the power to institute proceedings in the proper court for that purpose. If the court adjudges that acts violative of the statute have been done or permitted by the directors, it can forfeit the charter, and thus it will be judicially determined that acts have been done which render the directors participating therein liable therefor, but it is still a question for the comptroller to determine whether the receiver shall or shall not undertake the enforcement of such liability. If, by reason of the insolvency of the directors, it should appear to the comptroller that the costs incurred would exceed the returns, he might, in the interest of the shareholders and creditors, refuse to direct the receiver to undertake the enforcement of the liability, and in such case the receiver would not have the right to institute the proceedings. If in the proceedings to forfeit the charter it should be adjudged that no grounds therefor existed, the comptroller would not have the right to disregard such adjudication, and to authorize the receiver to sue the directors; and, until the proper court has decided that acts of forfeiture exist, neither the comptroller nor any one else can determine that such acts do exist, and make such determination the basis for authorizing the receiver to sue the directors.

The third ground of demurrer presents the question of the statute of limitations. If the views expressed on the other points arising on the demurrer are correct, and it is necessary for the comptroller, by a proper proceeding, to procure a forfeiture of the charter before he can authorize the receiver to sue the directors, it of necessity follows that any limitation on the right of forfeiture must inure to the benefit of the directors; that is to say, if the right to forfeit the charter for a given violation of the provisions of title 62 is lost by lapse of time, then the directors cannot be proceeded against for such alleged violation, because it cannot be judicially determined that such violation exists. Section 1047 of the Revised Statutes provides that—

"No suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, shall be maintained, ex-

cept in cases where it is otherwise specially provided, unless the same is commenced within five years from the time when the penalty or forfeiture accrued; provided, that the person of the offender, or the property liable for such penalty or forfeiture, shall, within the same period, be found within the United States; so that the proper process therefor may be instituted and served against such person or property."

Section 5239 declares that any violation of the provisions of title 62, done or permitted knowingly by the directors of a national bank, shall be grounds for forfeiting the rights, privileges, and franchises of the bank. The doing the prohibited act is cause for a forfeiture which accrues under the provisions of the laws of the United States, and is therefore subject to the limitation of five years, enacted by section 1047. I can see no ground for excepting such a forfeiture from the general declaration touching suits for the enforcement of penalties and forfeitures contained in that section, and, in the view I take of the necessity of an adjudication forfeiting the charter of the bank as a prerequisite to the maintenance of a suit by the receiver against the directors, it follows that this limitation inures indirectly to the benefit of the directors. If, however the receiver can maintain a suit to enforce the liability created by section 5239 against the directors, regardless of the question whether the charter has been forfeited or not, then the question would arise whether such liability is to be deemed a penalty provided for the violations of the statute, in which case the limitation of five years provided in section 1047 would apply; or does section 5239 simply impose the liability upon the directors, and create the right to sue for damages on part of any one injured? A penal statute is ordinarily defined to be one which inflicts a penalty for the violation of some one or more of its provisions. The doing the act forbidden incurs the penalty, regardless of the question whether injury has been caused thereby to any particular person. Under the provisions of section 5239, the liability of the directors is dependent, not only on the fact of a violation of some one or more of the provisions of title 62, but also on the fact of causing damage by such violation to the association, its shareholders or other parties. In this particular, therefore, the section does not impose a penalty, but creates a liability for damages, if any such are caused by the wrongful acts of the directors. If, then, the liability of the directors under section 5239 is not to be deemed a penalty, within the meaning of that term as used in section 1047, the limitation therein contained is not applicable.

It is, however, urged on behalf of defendants that if the liability of the directors is not to be deemed a penalty within the meaning of section 1047, but is to be held to be merely a liability to respond to damages for a wrong committed, then the provisions of the statute of Iowa limiting such actions to two years is applicable. The question of when and under what circumstances the state statute of limitations is available as a defense in actions in the courts of the United States was considered by this court in *May* v. *County of Buchanan*, 29 Fed. Rep. 469, and the conclusion therein reached is, it seems to me, decisive of the present case. When the cause of action is created by a statute of the United

States, the provisions of the state statute of limitations do not apply thereto, unless congress has so declared. If, then, an action at law is maintainable by the receiver for the purpose of enforcing the liability of the directors created by section 5239, there seems to be no statutory provision limiting the time within which such action may be brought. If, however, the remedy against the directors is by a proceeding in equity, the court, in the absence of statutory limitation, can apply the recognized equitable principle of refusing to give relief claimed upon stale or antiquated demands, or where there has been laches on part of the complainant or long acquiescense on part of those now seeking relief, but would not, of course, be justified in refusing relief upon such grounds, unless the facts of the case were such as to clearly demand the application of the rule. Upon the first and second grounds the demurrer is sustained.