STEPHENS *v.* OVERSTOLZ.

*(Circuit Court, E. D. Missouri, E. D.* October 13, 1890.)

1. NATIONAL BANKS—EXCESSIVE LOANS—LIABILITY OF DIRECTORS.
   The right to maintain an action under Rev. St. U. S. § 5239, to recover of a bank director the damages sustained by his bank in consequence of excessive loans made by him while serving in the capacity of director, is not affected by the fact that the comptroller has or has not procured a forfeiture of the bank's charter.
2. SAME—REMEDY AT LAW.
   An action by a receiver of a bank whose charter has been forfeited under above statute against a director is properly brought at law; there being no necessity for invoking the aid of a court of chancery either because of the nature of the issues involved, or to avoid a multiplicity of actions.
3. SAME—PLEADING.
   In such action, plaintiff may state the aggregate amount of the excessive loans made to each party, and the damage resulting therefrom in each case, accompanying each allegation with an exhibit showing the dates and amounts of the several loans that go to make up the aggregate sum stated in the petition, and is not compelled to declare in a separate count for each loan made.

At Law.

This was a suit by a receiver of an insolvent national bank, duly appointed under the provisions of section 5234 of the Revised Statutes of the United States, against the executrix of a deceased president and director of the bank, to recover damages alleged to have been sustained by the bank in consequence of loans knowingly made by the deceased, in his capacity as president and director, to four different customers of the bank, to each in excess of one-tenth of the amount of its capital stock actually paid in. The action was founded on sections 5200 and 5239 of the Revised Statutes of the United States. The declaration, or "petition," as it is termed under the Missouri Code, recited the organization of the insolvent bank, the fact that defendant's testator was its president and one of its directors from its organization until it became insolvent, that plaintiff was duly appointed receiver of its affairs, etc., and then averred, in substance, that the testator in his life-time, and while acting in the capacity of president and director, "participated in and knowingly assented to the making of loans" of the funds of said bank to Nathan Goldsmith & Co., to the amount of $99,591, in excess of one-tenth of the capital stock of the bank, $54,591 whereof was thereby wholly lost, and that the bank was thereby damaged to that extent. Similar allegations, differing only in amounts and dates, were made in separate paragraphs with respect to excessive loans to the John Meyer Lumber Company, the St. Louis Planing Mill Company, and the Elliottville Mills. The petition showed the total amount of the excessive loans made to each of the four concerns above mentioned, and the amount of the loss thereby and in each instance sustained. Attached to the petition were four exhibits, showing the dealings between the bank and said companies for the period of several years, from which it appeared that the excessive loans in question were not made in one sum to either of the several debtors, but that each of them borrowed from time to time, and in different amounts, money in excess of the sum authorized by law to be

loaned. The petition also showed that the insolvent bank was ousted of its charter before this suit was begun, in a proceeding brought by the comptroller of the currency under the provisions of section 5239, *supra*, and that in such proceeding the comptroller counted upon the excessive loans to Nathan Goldsmith & Co., to the John Meyer Lumber Company, and to the St. Louis Planing Mill Company as a violation of law, and that, in consequence of such loans and other violations of law, the court decreed a forfeiture of the bank's charter.

*Draffen & Williams, Lubke & Muench,* and *Geo. D. Reynolds,* U. S. Atty., for plaintiff.

*Chester H. Krum,* for defendant.

THAYER, J. We have heretofore held in this case that the cause of action did not abate with the death of the director, but survives against his executrix. Since then the petition has been amended, and a demurrer, and also motions to compel an election as between causes of action, have been filed and argued, which present some questions not explicitly decided on the former hearing.

First in order of importance is the demurrer, and it presents two propositions in the alternative.

It is said, in the first place, that the remedy under section 5239 is statutory, in the sense that, before a recovery can be had against a bank director under that section, on account of an excessive loan, it must be averred and proven that the charter of the bank has been forfeited in a proceeding taken by the comptroller, because of the excessive loan in question, and that, inasmuch as the Elliottville Mill's loan was not counted upon in the comptroller's proceeding, there can be no recovery of the damage sustained by that loan. On the hearing of the demurrer, we expressed the opinion, and further consideration of the subject has strengthened the conviction, that the right to recover, under section 5239, of a bank director the damages sustained in consequence of an excessive loan under section 5200, is in no wise affected by the fact that the comptroller has or has not procured a forfeiture of the charter. According to our view of section 5239, two results, in no respect dependent upon each other, may follow the making of an excessive loan; that is to say, the comptroller may, if he thinks proper, proceed to have the charter revoked, alleging the excessive loan as a violation of law; but, whether he does so or not, a director of the bank, who knowingly participates in or assents to the loan, may be compelled to make good whatever damage results to the bank from making the same. This seems to us to be the obvious meaning of the law.

Failing on the proposition last mentioned, that the action is statutory in the sense above indicated, counsel for the executrix next insists that, if the right of action is not statutory in that sense, then the remedy for the alleged wrongful acts is in equity, and not at law, and that the demurrer should be sustained for that reason. This we regard as the most important point presented for consideration.

Under statutes imposing a liability on directors or stockholders of cor-

porations without prescribing the form of remedy, the question has frequently arisen whether the appropriate remedy was at law or in equity; and the decisions on that point have usually turned on the nature of the liability imposed, the difficulties standing in the way of the enforcement of the liability in a strictly legal proceeding, and on other considerations of a similar character. Thus in the case of *Hornor* v. *Henning*, 93 U. S. 228, an act of congress authorizing the organization of savings banks in the District of Columbia provided, among other things, that, "if the indebtedness of any company organized under the act, should at any time exceed the amount of its capital stock, the trustees of such company assenting thereto should be personally and individually liable for such excess to the creditors of the company." A suit at law having been brought under this statute against several trustees of a savings bank by a single creditor, the court held that, notwithstanding the literal reading of the statute, congress did not intend to make the trustees liable beyond the debts of the bank which it failed or refused to pay, that the act was intended for the common benefit of all the creditors of the bank, and that the liability of the trustees for an excessive indebtedness at any time created was in the nature of a trust fund, in which all the creditors were entitled to share in proportion to the amount of their debts, so far as it might be necessary to resort to the fund to pay the same. Viewing the statute in that light, the court further held that the remedy for its enforcement was in equity rather than at law, inasmuch as it was necessary to take an account of all the liabilities and assets of the bank, to determine to what extent it was necessary to resort to the fund in question, and for the further reason that a proceeding in equity would avoid a multiplicity of suits, and prevent one creditor from absorbing a greater portion of the fund than he was entitled to. In the case of *Stone* v. *Chisolm*, 113 U. S. 302, 5 Sup. Ct. Rep. 497, which was a suit brought to enforce the same kind of statutory liability last described, the doctrine announced in *Hornor* v. *Henning* was applied and reaffirmed. It was also held in the case of *Crown* v. *Brainerd*, 57 Vt. 625, under a statute making the directors of a corporation liable to its creditors for any loss resulting from their "incompetency, unfaithfulness, or remissness in the discharge of their official duties," that the remedy for the enforcement of the liability was in equity, because the remedy afforded by that forum would be more "complete, convenient, and comprehensive," and because the machinery of a court of law was not adequate to the enforcement of the liability in an equitable manner. On the other hand, the right to sue at law has been sustained in a class of cases where the liability imposed was of such a nature that it was thought to be conveniently enforceable in a legal proceeding. In New York and Missouri, and perhaps in some other states, it is held that an action at law will lie under a statute declaring, in substance, that if a corporation becomes dissolved leaving debts unpaid, the persons then composing it shall be individually responsible to the extent of their stock. *Bank* v. *Ibbotson*, 24 Wend. 479, (opinion by NELSON, C. J.;) *Perry* v. *Turner*, 55 Mo. 418, (opinion by NAPTON, J.) In Maryland and Illinois it is also held that a suit at

law will lie under a statute making stockholders liable, to the extent of their stock, for all debts contracted prior to the time the whole amount of the capital is paid in. *Culver* v. *Bank*, 64 Ill. 528; *Matthews* v. *Albert*, 24 Md. 527; *Norris* v. *Johnson*, 34 Md. 485.

Our conclusion is that, for the purpose of determining whether an action at law will lie in the case at bar, consideration ought to be given chiefly to the question whether the remedy at law, as compared with the remedy in equity, is as convenient and adequate, and not more burdensome to the party proceeded against. The suit before us is to recover whatever damages the Fifth National Bank may have sustained in consequence of excessive loans knowingly made or assented to by the defendant's testator, while serving in the capacity of director. The suit is by a receiver duly appointed, in whom are now vested all claims of the bank; and, as whatever injury resulted from making the excessive loans in question was a damage primarily done to, and recoverable by, the bank, it is not apparent that any stockholder or creditor of the institution can maintain a suit against the executrix for the alleged excessive loans either during the pendency or after the termination of the present action. There is no necessity, therefore, to resort to equity to avoid a multiplicity of suits.

Furthermore, the issues to be tried appear to be such as can be conveniently disposed of by a court of law. They are simply whether certain specified loans, made to four different parties, were made at a time when the several parties were already indebted to the bank in a sum equal to one-tenth of its capital actually paid in, and whether such loans were knowingly made or assented to by the testator, and what portion of the moneys so loaned were lost. We can foresee no inherent difficulty in trying all of these issues intelligently and fairly in a court of law. The case appears to be one in which there is no necessity for invoking the aid of a court of chancery, either because of the nature of the issues involved, or to avoid a multiplicity of actions. The demurrer will be overruled, in accordance with these views.

The several motions to compel an election between causes of action raise merely a question of pleading. In support of the motions, the contention is that plaintiff should be compelled to declare in a separate count for each excessive loan made to the several parties named in the petition, on the ground that each loan constitutes an independent cause of action. On the other hand, it is contended that plaintiff is entitled to state the aggregate amount of the excessive loans made to each party, and the damage resulting therefrom in each case, accompanying each allegation with an exhibit, showing the dates and amounts of the several loans that go to make up the aggregate sum stated in the petition.

We think the latter view is supported by the better reasons. The rule contended for by the executrix would render the complaint very prolix, without securing even to her any substantial advantage. The exhibits attached to the petition fully advise the defendant of the dates and amounts of the several unlawful loans, and, in any event, the burden will be on the plaintiff to show that the several loans so specified were

each made with the knowledge and assent of the deceased director. The judgment ultimately rendered in the case will also bar any further proceedings on account of any of the loans mentioned in the exhibits. We fail to see, therefore, how the method of pleading that has been adopted will put the defense to any disadvantage. Furthermore, in view of the fact that the statute creates a right of action for making advances beyond a given limit, we think it is sufficient to aver that loans were knowingly made to certain parties by the deceased director to a given amount beyond that limit, which resulted in a loss to the bank, and that no obligation rests on the pleader to count upon each loan as a separate cause of action. The dates and amounts of the several loans are matters of evidence to be established at the trial. In support of this view, we may fairly invoke the rule of pleading under the Missouri Code, which permits a plaintiff in a suit on a bond or a contract to assign any number of breaches, although they occurred at different times, in one and the same count of the declaration. *State* v. *Davis,* 35 Mo. 407.

Upon the whole, we conclude that the motions to compel an election should be overruled, and it is so ordered.

MILLER, Justice. I fully concur in the foregoing opinion.