### COCKRILL v. COOPER et al.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

No. 968.

1. LIMITATION OF ACTIONS—ARKANSAS STATUTES—SUIT AGAINST NATIONAL BANK DIRECTORS.
  The provision contained in Rev. St. Ark. 1837, c. 91, § 7, barring "all special actions on the case" after the lapse of one year, was repealed by implication by the code of procedure adopted in that state in the year 1868, so far as it affected actions on the case other than actions for crim. con., assault

and battery, false imprisonment, slander, and actions for words spoken whereby special damages are sustained. It was accordingly held that said provision has no application to an action on the case brought against the directors of a national bank under Rev. St. § 5239, for making excessive loans, or to actions brought against such officers for other acts, either of misfeasance or nonfeasance. 78 Fed. 679, reversed.

2. NATIONAL BANK—LIABILITY OF DIRECTORS FOR EXCESSIVE LOANS.
The forfeiture of the bank's charter in a suit brought by the comptroller of the currency is not a condition precedent to the maintenance of a suit against its directors, under Rev. St. §§ 5200, 5239, for excessive loans.

3. EQUITY JURISDICTION—SUITS AGAINST DIRECTORS.
A court of equity has jurisdiction of a suit against the directors of a national bank for excessive loans, under Rev. St. §§ 5200, 5239, where the suit is against a large number of directors, whose terms of service were not identical, where the excessive loans were inaugurated by one set of directors, and continued, renewed, or enlarged by another, and where the directors were also charged with a violation of Rev. St. § 5204, in declaring dividends.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

On June 19, 1895, Sterling R. Cockrill, as receiver of the First National Bank of Little Rock, Ark., the appellant, exhibited his bill of complaint against E. J. Butler, since deceased, and the appellees Mark M. Cohn, John W. Goodwin, Nick Kupferle, P. K. Roots, M. G. Hall, Gus Blass, George H. Sanders, C. M. Taylor, William Farrell, Henry M. Cooper, H. G. Fleming, John M. Taylor, James Joyce, C. T. Abeles, and against Mrs. Emily M. Roots, P. K. Roots, and John McClure, as executors of Logan H. Roots, deceased, in the circuit court of the United States for the Eastern district of Arkansas. The bill charged, in substance, that the aforesaid bank was insolvent on February 1, 1893, and that Logan H. Roots was duly appointed receiver thereof by the comptroller of the currency; that Roots subsequently died, and that the complainant had been duly appointed receiver in his place and stead; that from June 2, 1890, until February 1, 1893, E. J. Butler and certain of the above-named appellees, to wit, John W. Goodwin, Gus Blass, and Nick Kupferle, were members of the board of directors of the aforesaid bank, and that during said period Logan H. Roots, now deceased, and the other appellees above named, served respectively at various times as members of the directory; that on May 23, 1890, the bank had a capital stock of $250,000, and was then solvent and prosperous; that on June 19, 1890, H. G. Allis was elected president of the bank, in place of Logan H. Roots, who had previously served in that capacity; and that thereafter, under the direction and guidance of said Allis, and with the knowledge and consent of the aforesaid directors, the bank entered upon and pursued a business policy which soon impaired its capital, and ultimately led to its insolvency. The particular derelictions of duty complained of in the bill consisted in the charge that during their respective periods of service the above-named directors of said bank, in violation of section 5200, Rev. St. U. S., knowingly suffered and permitted loans to be made in excess of one-tenth of the amount of the capital of said bank actually paid in, to each of the following persons and corporations; that is to say, to H. G. Allis, the president of the bank; to the City Electric Street-Railway Company, a corporation of which said Allis was president; to the McCarthy-Joyce Company, a corporation in which said Allis was interested; and to the Press Printing Company, a corporation. whose stock was principally owned by one George R. Brown, who was an intimate friend and business associate of said Allis. It was also alleged in the bill that by reason of such illegal and excessive loans to irresponsible parties the funds of the bank were dissipated and lost, and that it was thereby rendered insolvent. It was further charged, in substance, that on January 1, 1892, July 1, 1892, and on January 10, 1893, after the capital of the bank had become seriously impaired, so that it could not lawfully pay dividends, the directors above named nevertheless declared and paid a dividend of 4 per cent. at each of said dates, the total amount so paid being $60,000, and that the aforesaid directors, as stockholders, each received and accepted a portion of the dividends so paid. The bill also showed that the comp-

troller of the currency had caused an assessment of 92 per cent. to be levied on the shareholders of the bank, and that such assessment, together with all of the bank's other assets, would be insufficient to pay its liabilities. The appellees above named, who were the defendants below, demurred to the bill for the following reasons: First, that it disclosed no equity; second, because it did not appear that the comptroller of the currency had procured a forfeiture of the charter of the bank, pursuant to section 5239 of the Revised Statutes of the United States; third, because the bill was uncertain, indefinite, and insufficient in its allegations, and did not show what wrongs complained of had been committed by the respective defendants; and, fourth, because the action was barred by the statute of limitations of the state of Arkansas. The circuit court held that the first three grounds of demurrer were untenable, but that the fourth ground was well taken. It accordingly dismissed the bill, upon the assumption that the action was barred by limitation. The case comes to this court on appeal from such decree.

J. M. Moore and Sterling R. Cockrill (Ashley Cockrill, on brief), for appellant.

W. E. Hemingway and John McClure (U. M. Rose, G. B. Rose, E. W. Kimball, and Morris M. Cohn, on brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Inasmuch as the case in hand was decided by the circuit court on the ground that the action was barred by limitation, that contention will be first noticed. The following provisions relative to the limitation of actions are found in Rev. St. Ark. 1837, c. 91:

"Sec. 6. The following actions shall be commenced within three years after the passage of this act * * *: First, all actions of debt founded upon any contract obligation or liability (not under seal) excepting such as are brought upon the judgment or decree of some court of record of the United States of this or some other state; second, all actions upon judgments rendered in any court not being a court of record; third, all actions for arrearages of rent (not reserved by some instrument in writing under seal); fourth, all actions of account, assumpsit or on the case, founded on any contract or liability, expressed or implied; fifth, all actions for trespass on lands or for libels; sixth, all actions for taking or injuring any goods or chattels.

"Sec. 7. The following actions shall be commenced within one year after the cause of action shall accrue, and not after: First, all special actions on the case, for criminal conversation, assault and battery and false imprisonment; second, all actions for words spoken slandering the character of another; third, all words spoken whereby special damages are sustained."

Although it might seem from a casual reading of section 7, last quoted, that the one-year bar was only applicable to actions for crim. con., assault and battery, false imprisonment, and slander, yet in an early case (Patterson v. Thompson, 24 Ark. 55, 71, 72) the one-year bar was held applicable to an action for seduction; and language was employed from which it is plainly inferable that the court concluded that the one-year bar was applicable to all special actions on the case, as well as to those causes of action which are specifically enumerated. The foregoing sections of the limitation act appear to have remained in force, unaltered, until the adoption of the Code of Procedure during the year 1868, which contained the usual provisions abolishing all forms of action theretofore existing, and declaring that there should

thereafter be but one form of action for the protection of private rights and the redress of private grievances, to be termed "a civil action." Mansf. Dig. Ark. §§ 4914, 4915. Since the adoption of the Code of Procedure in 1868, the laws of Arkansas have been three times digested and published, in pursuance of legislative authority, namely, by Edward W. Gantt, in 1874; by W. W. Mansfield, in 1884; and by Sandels and Hill, in 1894. The several digesters last named appear to have acted on the assumption that the Code of Procedure necessarily repealed so much of section 7 of the limitation act, above quoted, as prescribed a limitation of one year for "all special actions on the case." In accordance with that view the several digesters cast sections 6 and 7 of the limitation act, above quoted, into the following form:

"The following actions shall be commenced within three years after the cause of action shall accrue, and not after: First, all actions founded upon any contract or liability, express or implied, not in writing. * * * The following actions shall be commenced within one year after the cause of action shall accrue, and not after: First, all actions for criminal conversation, assault and battery and false imprisonment; second, all actions for words spoken slandering the character of another; third, all words spoken whereby special damages are sustained." Ark. Dig. St. 1874, §§ 4120, 4121; Mansf. Dig. 1884, §§ 4478, 4479; Sand. & H. Dig. 1894, §§ 4822, 4823.

Such action on the part of the digesters seems to have met with the full approval of the bench and bar of the state of Arkansas for the past quarter of a century. The supreme court of the state has never decided that the provision found in section 7, c. 91, Rev. St. Ark. 1837, barring "all special actions on the case" in one year, is still in force. On the contrary, it has expressly ruled that the limitation applicable to an action brought against a railway company for overflowing the land of an adjoining proprietor by wrongfully obstructing a ditch or drain is three years, and that the same period of limitation applies to an action to recover damages occasioned by a nuisance. Railway Co. v. Morris, 35 Ark. 622; Railway Co. v. Chapman, 39 Ark. 463, 472; Railway Co. v. Biggs, 52 Ark. 240, 12 S. W. 331; Railway Co. v. Anderson, 62 Ark. 360, 365, 35 S. W. 791. Prior to the Code, wrongs of such a nature would have been redressed by actions on the case. Therefore the cases cited decide, in effect, that the provision barring all special actions on the case after the lapse of one year is no longer in force. Nor is this view, which seems to have been entertained by all the digesters of the Arkansas statutes, wholly without reasons for its support. Statutes of limitation sometimes operate to extinguish a cause of action, but generally they are so worded as to bar the remedy by which a cause of action may be enforced. Finnell v. Railway Co., 33 Fed. 427. Before the various forms of action known to the common law were abolished by the Code, a litigant frequently had a choice of remedies for the enforcement of a right or the redress of a wrong; and in such cases it sometimes happened that relief could be obtained in one form of action, as, for instance, by an action of debt or assumpsit, although the remedy for the same wrong by an action of trover was barred by limitation. This effect of the statute upon different forms of action is illustrated both by the text-books and the authorities, although the cases are not numerous. Lamb v. Clark, 5 Pick. 193; Burdoine v. Shelton, 10 Yerg. 41, 47; Bedford v.

Brady, Id. 350, 354; McCluny v. Silliman, 3 Pet. 270, 278; Ang. Lim. (5th Ed.) § 72; Wood, Lim. §§ 35, 58, and cases there cited. In view of this well-known operation of the statute of limitations in certain cases, the able lawyers who were selected to digest and arrange the Arkansas statutes, subsequent to the adoption of the Code, doubtless concluded that the clause of the limitation act barring "all special actions on the case" after the lapse of one year was addressed simply to a particular form of action, and that, when the form of action in question was abolished by the Code, nothing was left upon which the limitation could legitimately operate, and that it was therefore repealed. Whether this reasoning was entirely conclusive, we need not stop at present to inquire. It is sufficient for present purposes, and in this jurisdiction, to say that it has been accepted as satisfactory by the bench and bar of the state of Arkansas for the past 25 years, and that it is now too late to disturb a rule which has become firmly established in the courts of that state. If an action for unlawfully obstructing a water course is not barred until after the lapse of three years, then we can perceive no reason why the liability which the defendants below incurred by the acts of misfeasance and nonfeasance charged in the bill should be barred by a shorter period. In both classes of cases the liability is one that is imposed or created by law, and there is nothing in the statutes of the state which indicates that the period of limitation is, or ought to be, different. The circuit court erred, therefore, in holding that the one-year bar was applicable to the present controversy.

The other points raised by the demurrer were decided below in favor of the receiver, but as they have been discussed by counsel for the appellees, and as the case returns to the lower court for a further hearing, it becomes necessary to consider them.

The question whether the directors of a national bank can be made to respond for losses occasioned by excessive loans, under the provisions of sections 5200 and 5239 of the Revised Statutes, in advance of a forfeiture of the bank's charter, has been variously decided at nisi prius. The authorities holding the affirmative of this proposition are the following: Stephens v. Overstolz, 43 Fed. 771, 772; Bank v. Wade, 84 Fed. 10, 13, 14; 3 Thomp. Corp. §§ 4113, 4303. The cases which have taken a contrary view are the following: Welles v. Graves, 41 Fed. 459, 468; Hayden v. Thompson, 67 Fed. 273, 277; and Gerner v. Thompson, 74 Fed. 125, 131. The cases of Kennedy v. Gibson, 8 Wall. 498, and Conway v. Halsey, 44 N. J. Law, 462, which have occasionally been cited in support of the latter view, in reality have no immediate bearing on the point at issue, and are therefore neither important nor authoritative. Conway v. Halsey decides that an action at law cannot be maintained by a stockholder of a national bank against the president and directors for mismanagement of the corporate affairs, because the right of action for damages incident to such mismanagement is vested primarily in the corporation, while the case of Kennedy v. Gibson decides that the receiver of a national bank cannot, of his own volition, inaugurate a proceeding against stockholders to enforce their personal liability under section 5151, but must await the action and direction of the comptroller of the currency.

The argument in support of the contention that the directors of a national bank are not liable to be sued, either by the bank or its receiver, for damages occasioned by excessive loans, prior to a forfeiture of the bank's charter, seems to be founded to some extent on the assumption that the right to sue the directors of a national bank for negligent or excessive loans is a right which is created solely by the federal statute, that such a cause of action is purely statutory, and that, before a suit thereon can be maintained, all the conditions mentioned in section 5239, including a forfeiture of the bank's charter, must be shown to exist. This, however, is not a correct view of the scope and purpose of the statute, as was pointed out by Mr. Justice Miller in Stephens v. Overstolz, 43 Fed. 465, and as was declared, in substance, by Mr. Chief Justice Fuller in the case of Briggs v. Spaulding, 141 U. S. 132, 146, 11 Sup. Ct. 924. The concluding paragraph of section 5239, which declares, in effect, that the directors of a national bank shall be personally liable for damages resulting from violations of the national bank act, provided they participate therein or assent thereto, is nothing more than a recognition of a liability which the directors of such institutions would incur at common law in the absence of the statute. The directors of a bank or other corporation are, and always were, personally liable at common law for unauthorized acts, as well as for a failure to exercise proper care and diligence in the discharge of the duties of their office, when such acts of misfeasance or nonfeasance are productive of damage to the corporation. Hodges v. Screw Co., 1 R. I. 312; Spering's Appeal, 71 Pa. St. 11; Hun v. Cary, 82 N. Y. 65, 72, 73; Brinckerhoff v. Bostwick, 88 N. Y. 52, 58; Mor. Priv. Corp. §§ 551, 556, and cases there cited. Section 5200 of the Revised Statutes, which prohibits loans to any one person, firm, or corporation in excess of 10 per cent. of the capital stock of a national bank actually paid in, creates a fixed standard by which to determine, in many cases, whether loans which have been made to particular individuals or corporations are excessive, and for that reason indicative of negligence or bad faith, without remitting those questions to the decision of a jury or a chancellor, while section 5239 simply gives expression to a rule of the common law, that directors who have knowingly assented to such excessive and unauthorized loans shall be personally liable for all damages which the corporation thereby sustains. If loans in excess of 10 per cent. of the capital stock are made, the statute obviates the necessity of determining whether they were excessive, and of making any inquiry into the motives or conduct of the directors, other than the inquiry whether the loans were knowingly made or assented to. The result is that the statute, considered as a whole, prescribes a standard of duty, such as might be prescribed by a by-law of the corporation, without creating a new cause of action, or altering the foundation upon which the personal liability of directors for wrongful or negligent acts ultimately rests or depends. Viewing the case in this aspect, we are not able to concede that congress intended by section 5239 to declare that the directors of a national bank should only be subject to a suit for losses occasioned through excessive loans in those cases where the charter has first been forfeited at the instance of the comptroller of the cur-

rency. That interpretation of the statute, to the extent that it would prevent a national bank, while a going concern, from maintaining a suit against its directors for losses sustained by acts that were confessedly unlawful, places the directors of such institutions in a more favorable position than the directors of other banks which are not subject to the provisions of the national bank act. Such, we believe, was not the intent of the lawmaker. Cases may easily be supposed, and have doubtless occurred, where a national bank has sustained damage by reason of excessive loans made with the approval of its board of directors, and yet the losses incident to such wrongful acts were not so great as to impair the bank's capital, and render a forfeiture of its charter either necessary or expedient. It can scarcely be supposed that congress intended to frame a law which in a case of that kind would either compel the comptroller to forfeit the franchises of the corporation, or suffer its directors to escape liability for a plain violation of law; yet such would be the necessary result if the contention in behalf of the appellees is well founded. Without .pursuing this branch of the case at greater length, we shall content ourselves with the statement that the forfeiture of a bank's franchises, in a suit brought by the comptroller for that purpose, is not, in our judgment, a condition precedent to the maintenance of a suit against its directors for excessive loans. The two proceedings last mentioned have no necessary relation to each other. The directors of a bank, being agents of the corporation, are bound by the law of agency to act within the scope of the bank's charter and by-laws, and to exercise at all times a reasonable degree of care and diligence in the discharge of the duties which they have been appointed to perform. If they are guilty of a culpable violation of this obligation, and the corporation thereby sustains damage, the directors are personally liable therefor to the corporation while it is a going concern, and to its receiver when it has become insolvent; and this without reference to the fact that the franchises of the corporation have not been forfeited.

Another important question which is raised by the demurrer, and was discussed at some length on the argument, is whether the wrongs complained of in the bill may be redressed in equity, or whether a court of law is alone competent to afford relief. In behalf of the appellees it is urged, in substance, that, as the directors of a corporation are not vested with the title to its property and effects, they are not trustees, but mere agents, of the corporation, and that an action brought against them by the corporation or its receiver to recover damages for mismanagement of the corporate affairs is necessarily one of legal cognizance, which can only be maintained at law. It may be conceded that directors are not, technically, trustees, because they are not vested with a title to the corporate property, and that their relation to the corporation which they represent is that of agents, and that for many acts of misfeasance and nonfeasance they can be sued at law. But it does not follow from this concession that the jurisdiction of courts of law over directors is so far exclusive as to prevent courts of equity, under all circumstances, from affording redress for similar wrongs. It is admitted, as we understand, even by those courts which have taken the most advanced ground in support of the juris-

diction' at law, that cases may arise where the obstacles in the way of obtaining speedy and complete relief at law for illegal and negligent acts of directors are so great as to justify a resort to equity. O'Brien v. Fitzgerald, 143 N. Y. 377, 38 N. E. 371; Id. (Sup.) 39 N. Y. Supp. 707; Id., 150 N. Y. 572, 44 N. E. 1126; Dykman v. Keeney, (N. Y. App.) 48 N. E. 895. In the case of Hayden v. Thompson, 36 U. S. App. 361, 17 C. C. A. 592, and 71 Fed. 60, this court upheld the right of a receiver of an insolvent national bank to maintain a bill in equity against the shareholders of the bank, collectively, to recover dividends which had been paid in violation of section 5204 of the Revised Statutes. The right to sue in equity was maintained on the ground of avoiding a multiplicity of actions; also, on the ground that the suit was one to redress a fraud and breaches of trust; and, generally, because the remedy at law was inadequate. Many other courts have entertained bills in equity, or have asserted their right to do so, for the purpose of compelling the directors of a corporation to make good losses which the corporation had sustained by reason of their unauthorized, negligent, or fraudulent acts. Briggs v. Spaulding, 141 U. S. 132, 11 Sup. Ct. 924; Hornor v. Henning, 93 U. S. 228; Stone v. Chisolm, 113 U. S. 302, 5 Sup. Ct. 497; Robinson v. Hall, 25 U. S. App. 48, 12 C. C. A. 674, and 63 Fed. 222; Hodges v. Screw Co., 1 R. I. 312; Ackerman v. Halsey, 37 N. J. Eq. 356; Williams v. McKay, 40 N. J. Eq. 189; Crown v. Brainerd, 57 Vt. 625; Swentzel v. Bank, 147 Pa. St. 140, 23 Atl. 405, 415; Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663; Id., 105 N. Y. 567, 12 N. E. 58; Schley v. Dixon, 24 Ga. 273; Bank v. Bosseiux, 3 Fed. 817; Welles v. Graves, 41 Fed. 459; Bank v. Wade, 84 Fed. 10; Stephens v. Overstolz, 43 Fed. 771, 773. Indeed, if there is any conflict of opinion touching the power of a court of chancery in this respect, it arises over the circumstances that shall be deemed sufficient to warrant its exercise. It is doubtless true that a stronger showing, by allegation and proof of the necessity for equitable relief, is required in some jurisdictions than in others; but the right of a court of equity to exercise jurisdiction in suits brought against directors, when the remedy at law is, for any reason, not fully adequate, cannot be successfully denied. The truth is that the office and functions of a director are so much akin to those of a trustee that in many cases no substantial reason can be given for exempting directors from that degree of control by a court of chancery which such courts ordinarily exercise over trustees. The doctrine is well settled in the federal courts that, in those cases where the right of a court of equity to afford redress for wrongful acts depends upon the inadequacy of the legal remedy, courts of equity may exercise jurisdiction, unless the legal remedy is "as plain,   *   *   *   practical, and efficient to the ends of justice and its prompt administration as the remedy in equity." In determining whether a suitor should be permitted to sue in equity, the federal courts have always attached much importance to the fact that the remedy in the latter forum, as compared with the remedy at law, "will save time and expense and a multiplicity of suits, and settle finally the rights of all concerned in one litigation." In other words, the argument ab inconvenienti is never overlooked, but is given great weight. Boyce's Ex'rs v. Grundy, 3 Pet. 210, 213;

Oelrichs v. Spain, 15 Wall. 211, 228; Preteca v. Land-Grant Co., 4 U. S. App. 326, 330, 1 C. C. A. 607, and 50 Fed. 674; Hayden v. Thompson, 36 U. S. App. 361, 368, 17 C. C. A. 592, and 71 Fed. 60. If these tests are applied to the case in hand, we think it may be safely asserted that the receiver is entitled, on the showing made by the bill, to invoke the remedial powers and processes of a court of chancery to redress the wrongs of which he complains. The proceeding is brought against 16 directors, or their personal representatives, whose respective terms of service were not identical, except in four cases. If the receiver is compelled to sue at law, numerous actions must be brought; and very likely several separate actions would have to be brought against some of the directors, to comply strictly with the rules of procedure at law governing the joinder of parties. It is also fair to infer from what is stated in the bill that the excessive loans therein complained of were inaugurated by one set of directors, and either continued, renewed, or enlarged by another, so that a suit brought against any one of the directors would probably involve an inquiry into the proceedings of the board of directors, and into many of the financial transactions of the bank for the entire period during which its affairs are alleged to have been mismanaged. If the legal remedy is pursued, it is probable, therefore, that the receiver would find it necessary, in preparing his proof in numerous cases, to travel over much of the same ground in each case, while it is certain that the burden and expense of the litigation would be largely increased, and that the litigation itself would be needlessly prolonged and delayed. The right to sue in equity, however, does not depend altogether upon the considerations last mentioned. One charge contained in the bill is that the directors on several different occasions declared and appropriated dividends, in violation of section 5204 of the Revised Statutes. An investigation into the merits of this charge will necessarily involve a critical inquiry into the financial condition of the bank on each of said occasions; and as this court held in Hayden v. Thompson, 36 U. S. App. 361, 369, 17 C. C. A. 592, and 71 Fed. 60, that is an inquiry which is peculiarly appropriate to a court of chancery, since an account of any considerable length or intricacy cannot be stated before a jury with that degree of fairness and accuracy which is necessary, or at least desirable, in a judicial proceeding. We are led to the conclusion, therefore, that the legal remedy for the grievances alleged in the bill is neither as practical and efficient, nor as conducive to the speedy and correct administration of justice, as the remedy obtainable in equity. In the latter forum it will be possible in a single proceeding, and with much less labor and expense, to measure the responsibility of each director for the losses which the bank may have sustained in consequence of the alleged negligent and unauthorized acts of the directors, and at the same time to adjust all rights and equities of the directors, as between themselves, and as between them and the receiver, with reasonable accuracy, and with a close approximation to exact justice. In a case of this character such a result cannot be obtained at law. In conclusion, on this branch of the case, it is proper to add that for obvious reasons courts of equity are best adapted to adjust controversies such as usually arise between receivers of insolvent cor-

porations and the directors and managers of such concerns. The remedial processes of a court of chancery are of special utility in such cases, since it is usually found necessary, in the course of such proceedings, to unravel many irregular and intricate transactions, to the end that the responsibility for losses which have been sustained through the careless or fraudulent acts of directors or other managing officers may be located where it of right belongs. In a court of law there is always a greater probability that the guilty will escape detection, or that the innocent will be made to suffer for the wrongful acts of others. For this reason it seems evident that receivers and assignees of insolvent corporations will be embarrassed and delayed in the discharge of their duties, that the creditors of such concerns will in many cases sustain loss, and that equal and exact justice will not always be done, if the right of such officers to invoke the remedial powers of a court of chancery in aid of the administration of the trusts that have been committed to their charge is denied. The public interest therefore seems to demand that the right of such officers to sue in the forum of equity should neither be viewed with disfavor, nor denied on slight or technical grounds. It is sufficient to say that in the present case we have discovered no adequate reasons for denying the complainant's right to equitable relief.

This disposes of the fundamental objections to the bill on which the appellees seem to chiefly rely, and we deem it unnecessary to consider other objections thereto on the present occasion. The suit was dismissed by the lower court solely on the ground that it was barred by limitation, and even if it is true, as has been suggested, that some allegations are not sufficiently definite and certain, the appellant should have an opportunity to remedy such defects by amendment. It is made clear, we think, by the averments of the complaint, that the defendants, or some of them, were guilty of acts which entitle the receiver to recover the damages which were thereby sustained; and, that fact being apparent, we will not notice on the present appeal any technical defects of statement, which may be easily remedied by amendment. The decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings not inconsistent with this opinion.