## HAYDEN v. THOMPSON et al.

(Circuit Court of Appeals, Eighth Circuit. December 9, 1895.)

### No. 650.

1. EQUITY JURISDICTION—RECEIVER OF NATIONAL BANK—SUIT FOR DIVIDENDS.
   Equity has jurisdiction of a suit by the receiver of an insolvent national bank against all its shareholders to recover dividends unlawfully paid to them out of the capital at times when the bank had earned no net profits, and was in fact insolvent, it being in effect a suit to execute a trust, to undo a fraud, and to prevent a multiplicity of suits.

2. SAME—ORDER BY COMPTROLLER OF CURRENCY.
   A bill by the receiver to recover the dividends illegally paid may be brought without an express order from the comptroller of the currency.

3. SAME.
   It cannot be urged as a defense to such suit that the remedies pro- vided by the national banking act are exclusive, the right to recover di- verted trust funds not being dependent on statute.

4. EQUITY PLEADING—MULTIFARIOUSNESS.
   The fact that some of the defendants participated in but one or two of the sixteen dividends on which the suit was based, that others partici-

pated in more, and others in all, the dividends, does not render the bill multifarious.

5. DEFENSE OF LACHES—RULE OF DECISION.

The national courts, sitting in equity, act or refuse to act in analogy to the statute of limitations of the states in which they are sitting.

6. SAME—IMPLIED TRUST.

A stockholder in an insolvent bank who receives a dividend from funds properly belonging to the creditors holds it under an implied and not an express trust in favor of the creditors, and hence limitations run in his favor against an action to recover the dividend.

7. RUNNING OF LIMITATIONS—CONCEALMENT OF CAUSE OF ACTION.

The rule that the time limited for beginning an action for fraud shall not commence to run while defendant conceals it does not apply when the concealment is by a third person.

8. SAME.

In the absence of fraud the cause of action to recover the dividend wrongfully paid arose when the payment was made, and not upon the appointment of the receiver and the discovery that the other assets of the bank were insufficient to pay its debts.

Appeal from the Circuit Court of the United States for the District of Nebraska.

Bill by Kent K. Hayden, receiver of the Capital National Bank of Lincoln, Neb., against David E. Thompson and others. From a decree dismissing the bill (67 Fed. 273), complainant appeals. Reversed.

On July 6, 1894, the appellant, Kent K. Hayden, as receiver of the Capital National Bank of Lincoln, Neb., exhibited to the court below his bill in equity against the appellees, who were shareholders of that bank, to recover from them the amount of certain dividends which had been received by them out of the capital of the bank when it was insolvent, and had earned no net profits. The bill alleged that the Capital National Bank of Lincoln, Neb., was a banking association organized under the national banking act, and was engaged in business as such from June, 1884, until January 23, 1893; that the appellant was appointed its receiver by the comptroller of the currency of the United States under that act; that the appellees were shareholders of this bank during a part or all of the time between December 30, 1884, and January 23, 1893; that during all that time the bank was insolvent, its capital was greatly impaired, and it had not at any time accumulated any net earnings or clear profits of its business; that, nevertheless, during the time between December 30, 1884, and January 23, 1893, certain of the defendants, who were the directors of the bank, fraudulently, and with intent further to impair its capital, and to defraud the bank and its creditors, ordered and declared 16 semiannual dividends to its shareholders, which amounted in the aggregate to $253,000, of which the appellees received $213,708; that at the time of the commencement of this suit the total amount of the assets of the bank was less than the total amount of claims that had been allowed against it, and many claims had been presented to the receiver which had not been allowed; and that, while the facts that the capital was impaired when these dividends were respectively declared and paid, and that there were then no clear profits, were well known to many of the defendants, these facts, and all facts and circumstances indicating the actual condition of the bank and the unlawful practice of its directors, were carefully concealed from its depositors and creditors, and no fact or circumstance sufficient to put a prudent man upon inquiry was known or discovered by any of them until about January 23, 1893. The bill prayed that the court would by its decree ascertain and settle the relative amount of the assets of the bank, other than the amounts paid to the shareholders as dividends, and that it would decree that each of the appellees should pay back the entire amount he had received as dividends, or such a proportion of the aggregate amount received by him

"as the aggregate amount of the claims against said bank, allowed and allowable, bear to the assets of said bank." To this bill a large number of the appellees demurred, on the grounds that the complainant had an adequate remedy at law and that the bill was multifarious. The decree of the court from which this appeal was taken was that all the demurrers be sustained, that all the exceptions to the answers be overruled, and that the bill be dismissed. The defendant Thompson specified, in his demurrer, the further objection that the claim to recover the dividends paid more than four years before the action was commenced was barred by the statute of limitations. He was one of the directors of the bank, and it will be unnecessary to notice this objection in his case, because the bill against him could not have been dismissed on that ground in any event, since it alleged the payment to him of four dividends within four years of the commencement of the suit. Several of the defendants answered, and the complainant filed exceptions to these answers, which were overruled below, but it will be unnecessary to consider these answers and exceptions, because the bill could not have been rightfully dismissed upon the hearing upon the exceptions to the answers, since, if they were overruled, the complainant had a right to a hearing upon the bill and answer, or to file a replication, to take testimony, and to proceed to the hearing on the merits of the case, if he was so advised. The decree dismissing the bill rests upon the general demurrers. There was no other objection that could be fatal to the maintenance of the suit.

G. M. Lambertson (Amasa Cobb and A. E. Harvey, with him on the brief), for appellant.

J. W. Deweese, C. C. Flansburg, C. E. Magoon, and John H. Ames (Chas. O. Whedon, E. E. Brown, Wm. Leese, and Daniel F. Osgood, with them on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

May the receiver of an insolvent national bank maintain a suit in equity against all its shareholders to recover dividends that have been unlawfully paid to them out of the capital of the bank at times when the bank had earned no net profits, and when it was in fact insolvent? A clear conception of the nature of this suit and the principles upon which it rests will, in our opinion, do much to dispel the doubt which this question seems to have engendered, and to make the right answer to it apparent. This is a suit brought for the benefit of the creditors of this bank, by their proper legal representative, to recover $213,708, which was unlawfully taken out of a trust fund that was sacredly pledged to secure them, and distributed in various amounts among these appellees without consideration. It is a suit in equity to execute a trust, to undo a fraud, and to prevent a multiplicity of suits. If this is a true statement of the character and objects of this suit, it is in itself a conclusive answer to the question under consideration. The execution of trusts, the recovery of trust funds, the restoration of moneys fraudulently obtained, are all of equitable cognizance, wherever the remedy in question is the only complete and adequate remedy, and it is so where the suit in equity to enforce it saves the expense and avoids the trial of a multiplicity of actions at law. Is, then, this statement of the nature and objects of this suit correct? It is a suit to execute a trust, for the capital of a

bank or other moneyed corporation constitutes a trust fund pledged to secure the payment of its creditors. It is a breach of that trust to divert any portion of this fund from the creditors of the corporation to pay dividends to its stockholders, when it is insolvent, and any funds so diverted may be followed by the creditors, or by their proper representative, and recovered from any one, but a bona fide purchaser or a creditor, who has received them. Finn v. Brown, 142 U. S. 56, 70, 12 Sup. Ct. 136; Wood v. Dummer, 3 Mason, 308, Fed. Cas. No. 17,944; Bank v. Douglass, 1 McCrary, 86, 90, Fed. Cas. No. 14,375; Mumma v. Potomac Co., 8 Pet. 281, 286; Curran v. Arkansas, 15 How. 304; Sawyer v. Hoag, 17 Wall. 612; Hornor v. Henning, 93 U. S. 228; Cook, Stock, Stockh. & Corp. Law, §§ 546, 548; Beach, Priv. Corp. §§ 609, 610. It is a suit to undo a fraud, for it is a fraud upon the creditors of a corporation for its officers to commit such a breach of trust, and to divert a portion of the fund pledged for its creditors to the payment of dividends to its shareholders, when no profits have been earned, and the corporation is insolvent. Beach, Priv. Corp. § 610. It avoids a multiplicity of suits, for, if this suit cannot be maintained, the receiver must bring a separate action at law, and have a separate trial by jury, of 24 actions, one against each of the shareholders who are appellees herein, to recover the dividends for which this suit was brought. These 24 lawsuits constitute the adequate remedy at law, which, it is argued, prohibits the maintenance of this suit in equity. But the remedy at law which will preclude the maintenance of a suit in equity must be "plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." Boyce's Ex'rs v. Grundy, 3 Pet. 210, 215; Oelrichs v. Spain, 15 Wall. 211, 221, 228; Preteca v. Land Grant Co., 4 U. S. App. 326, 330, 1 C. C. A. 607, and 50 Fed. 674; Foltz v. Railway Co., 19 U. S. App. 576, 8 C. C. A. 635, 641, and 60 Fed. 316. Would these 24 actions at law be as efficient, as practical, and as prompt to attain the ends of justice as this suit in equity? The question is its own answer. The fund which the complainant seeks to recover in this suit was paid to the appellees in 16 semiannual dividends. The trial of this suit involves finding and stating the value of the assets, excluding bad debts, under section 5204, Rev. St., the amount of the liabilities, and the net profits of this bank, or the lack of them, at 16 different periods in its existence, and the determination of the extent of the liability of the appellees for each dividend by the state of this account at the time when the dividend was paid. It involves finding and stating the value of the assets, exclusive of these dividends, and the amount of the liabilities of this bank at the present time, and the determination from that statement of the amount of these dividends that will be required to pay the debts of the bank. The recovery of this fund by actions at law might, and probably would, involve taking each of these 17 accounts of the assets and liabilities of this bank as many times and before as many juries as there are shareholders interested in these accounts, respectively. When it is considered

how difficult it is for a judge and jury, in a trial according to the strict rules of the common law, where the evidence must be presented to 12 men, who must hastily agree upon their verdict before they separate, to correctly take and state any account which contains numerous items, that for this reason the taking of mutual accounts has become an acknowledged ground of equity jurisdiction (Gunn v. Manufacturing Co., 13 C. C. A. 529, 66 Fed. 382, 384; Kirby v. Railroad Co., 120 U. S. 130, 134, 7 Sup. Ct. 430), and that the trial of the claims of this complainant in separate actions at law against these several shareholders involves the taking of so many accounts by so many juries, the conclusion is irresistible that the complainant's remedy at law is not only inadequate and inefficient to reach the ends of justice, but that it is impracticable and useless for that purpose. These long and complicated accounts can be properly taken and stated, and the just deductions can be drawn from them only in a court in which a careful, patient, and extended examination of all the evidence can be made after it is submitted, by a mind trained in the science of accounting and familiar with the law which governs it. A court of equity, with its authority to select and appoint a suitable master, and to refer any or all of these accounts to him for examination and statement, and with its ample power to adapt its proceedings to the requirements of the case as it progresses, is the only tribunal fit to fairly try and justly decide the issues that may be presented in this case. The complainant, then, has no adequate remedy at law for the wrongs of which he here complains. By this suit he seeks to avoid a multiplicity of actions, to recover in one suit misappropriated trust funds, to set aside the fraudulent diversion of them and to restore them to their equitable owners. Why should this suit not be maintained?

One objection is that the bill does not allege that the comptroller of the currency has ever ordered or directed the receiver to bring this suit. Kennedy v. Gibson, 8 Wall. 498, is cited in support of this objection. That was a suit to enforce the individual liability imposed upon the shareholders of a national bank by section 5151, Rev. St., which provides that the shareholders "shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares, except," etc. Section 5234, Rev. St., provides, in the case of the appointment of a receiver of a national bank, that:

"Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders."

In Kennedy v. Gibson, the supreme court held that the comptroller of the currency must first decide, upon an examination of

the assets and liabilities of the bank, that it was necessary to enforce the individual liability of the stockholders in order to pay the debts of the association, and must order the receiver to enforce this liability, before the latter could maintain a suit for that purpose. The term, "individual liability of the stockholders," in this section, in the acts of congress, in the statutes of the states, and in the decisions of the courts, generally refers to the liability incurred under the acts of congress and the statutes by the mere ownership of stock. It has no reference to the liability which stockholders may incur by borrowing money of a bank, by indorsing notes held by it, by unlawfully taking or receiving its funds without consideration, and in many other ways. In U. S. v. Knox, 102 U. S. 422, the remark of Mr. Justice Swayne, at page 424, upon which much stress has been laid in argument in this case, that "by the common law the individual property of the stockholder was not liable for the debts of the corporation under any circumstances," was simply a declaration that at common law the mere ownership of stock imposed upon the stockholders no liability to pay the debts of the corporation. It was not, and was not intended to be, a statement that stockholders could not, by their contracts or by their torts, make their individual property liable, both at common law and under the acts of congress, to the amount of their contracts or to the amount of the damages caused by their torts, to pay the debts of an insolvent corporation to the same extent as if they were not stockholders. Now, this is not a suit to enforce the individual liability of these stockholders. It is a suit to follow and recover a part of the capital of this bank which was wrongfully paid to and received by them. By receiving it they became liable to pay it back to the bank for the benefit of its creditors. This liability to repay this fund was an asset of the bank which passed to the receiver. Under the act of congress he was vested with the right of the bank, and also with the rights of the creditors of the bank, to recover this fund for the purpose of an equal distribution among the latter. After his appointment he was the proper party to, and the only party who could, maintain a suit for its recovery. Bailey v. Mosher, 11 C. C. A. 304, 63 Fed. 488, 491; Bank v. Colby, 21 Wall. 609; Hornor v. Henning, 93 U. S. 228; Stephens v. Overstolz, 43 Fed. 771; Bank v. Peters, 44 Fed. 13. The act of congress provides that, under the direction of the comptroller, the receiver shall take possession of the books, records, and assets of the bank, collect all debts, dues, and claims belonging to it, and that, upon orders of the courts, or if necessary, he may take certain other proceedings. The basis of this suit is a claim of the bank for a part of its capital pledged to, but diverted from, its creditors to these appellees. It was one of the primary duties of the receiver to collect all the dues and claims of the bank. The claim on which this suit is based was one of these claims. It certainly was not the intention of congress that a special and separate order should be issued by the comptroller, specifying each claim, and directing the receiver to collect or to sue upon it, speci-

fying each book, record, and asset, and directing him to take possession of it, before he could discharge these duties; and in our opinion no special order of the comptroller was necessary to give him ample power to collect this claim and to maintain this suit. Bank v. Kennedy, 17 Wall. 19, 22.

Another objection to the maintenance of this suit that is strenuously urged is that the remedies provided by the national banking act are exclusive. It is argued that section 5151, Rev. St., imposes upon stockholders an individual liability for the debts of the banking association to an amount equal to the par value of their stock; that section 5204, Id., provides that "no association, or any member thereof, shall, during the time it shall continue its banking operations, withdraw, or permit to be withdrawn, either in the form of dividends or otherwise, any portion of its capital"; that section 5239, Id., provides that if the directors of any national banking association shall knowingly violate, or knowingly permit any violation of, the banking act, the franchises of the association shall be forfeited after a violation has been determined by the proper court, and "every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation"; that all these appellees were stockholders, and many of them were directors, of this banking association; and that the only liabilities they could incur for the diversion of the capital of the bank are those imposed by these provisions of the acts of congress. This is not, as we have said, a suit to enforce the individual liability of these stockholders under section 5151. It is not a suit to recover damages from these directors for a violation of the national banking act under section 5239. Hence the arguments presented, and the authorities cited at length, to show that the complainant has not properly proceeded to enforce the liabilities imposed by these sections require no consideration at our hands. This is a suit, we repeat, to recover diverted trust funds. It rests upon no statute or act of congress. Its foundation lies deeper. It rests on the fundamental principle of equity that he who has received moneys impressed with a trust, without consideration, ought to and must restore them. The right to recover such funds in chancery courts existed long before these acts of congress were passed, and we find no intimation in them of any intention to destroy or curtail it. On the other hand, the evident purpose of these acts was to increase, not to diminish, the liabilities of shareholders and directors. Suppose the holder of 10 shares of a national banking association borrows $10,000 of the capital of the association on his promissory note. Suppose that the officers of an insolvent national bank take $10,000 out of its capital and give it to such a shareholder without consideration. Is the only remedy of the receiver of such an association to recover this money, in either case, to enforce the individual liability of the stockholder? Suppose the stockholder

was also a director, is the receiver limited to a suit to enforce his individual liability under section 5151, and to recover damages under section 5239? May he not sue him on his note in the one case, and for the diverted trust funds in the other, regardless of these provisions of the statutes? These questions are their answers. Sections 5151 and 5239, Rev. St., exclude banking associations and receivers from none of the remedies for the collection of debts, claims, and dues of the bank or its creditors provided by the general rules and principles of law and equity, but they impose upon shareholders and directors additional liabilities, and subject them to proper remedies for their enforcement.

Finally, it is insisted that this bill cannot be maintained because it is multifarious,—that some of the appellees participated in but one or two of the sixteen dividends, while some participated in more, and others in all. The answer is that this suit is brought to recover $213,708 of the capital of this insolvent bank, every dollar of which, according to the allegations of this bill, was held in trust for the creditors of the bank. To make a bill brought by a single complainant against several defendants multifarious, it must either unite several distinct causes of action the grounds of which are different, or the causes of action contained in it against at least some of the defendants must be separate and disconnected from those stated against other defendants. While it may be difficult, or perhaps impossible, to draw the definite line of demarcation between bills that are and are not multifarious, it may be safely asserted that no bill is multifarious which presents a common point of litigation, the decision of which will affect the whole subject-matter, and will settle the rights of all the parties to the suit.

In Brinkerhoff v. Brown, 6 Johns. Ch. 139, Chancellor Kent, after an exhaustive review of the cases, said:

"The principle to be deduced from those cases is that a bill against several persons must relate to matters of the same nature, and having a connection with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct."

In Fellows v. Fellows, 4 Cow. 682, 700, 702, the court of errors of New York held that:

"Where several persons, although unconnected with each other, are made defendants, a demurrer will not lie if they have a common interest centering in the point in issue in the cause."

And the rule laid down by Chancellor Kent in Brinkerhoff v. Brown, supra, that a bill may be filed against several persons relative to matters of the same nature, forming a connected series of acts, all intended to defraud and injure the complainants, and in which all of the defendants were more or less concerned, though not jointly in each act, was approved. In Prentice v. Forwarding Co., 58 Fed. 437, 7 C. C. A. 293, 296, this court held that a bill in which several complainants who held title to separate lots of land under separate deeds from a common grantor, made at different times, sought to quiet their title against a single defendant, who

claimed adversely to their common title, could be maintained on the ground that the complainants, though owners in severalty, were united in interest in the vital question in issue in the case. In Brown v. Safe Deposit Co., 128 U. S. 403, 412, 9 Sup. Ct. 127, the supreme court declared:

"It is not indispensable that all the parties should have an interest in all the matters contained in the suit. It will be sufficient if each party has an interest in some material matters in the suit, and they are connected with the others. Addison v. Walker, 4 Younge & C. Ch. 442; Parr v. Attorney General, 8 Clark & F. 409, 435; Worthy v. Johnson, 8 Ga. 236."

Test this bill by any of these rules, and it is not multifarious. It presents a single cause of action, founded on a single ground. It is a suit to follow and recover $213,708 of the capital of this insolvent bank, on the ground that it was a trust fund pledged to secure its creditors, and that it has been diverted to the appellees. The allegations of the bill are that every dollar of this fund was so pledged and so diverted, and that each of the defendants has received a part of it. The demurrers admit these allegations. How can the defendants be heard to say that the complainant's claims against them are separate, distinct, and unconnected with each other, in the face of this admission that they have received and hold a part of the misappropriated fund which this suit is brought to recover? If the bill had alleged that this entire fund was diverted and distributed to the appellees at one time, no one could claim that such a bill was multifarious; but so far as the question now under consideration is concerned, this bill has exactly the same legal effect that such a bill would have. It alleges that the financial condition of the bank was the same from the time that the first dividend was declared until the last one was paid. If an issue should ever be made upon this allegation, the vital point in the case will be whether this $213,708 was taken from the capital or from the profits of the bank. If the complainant establishes his averments, a liability will be imposed upon each of the defendants for some portion of this fund. If he fails, all the defendants will be dismissed without day. Thus, each of these defendants, by sharing the diverted fund which is the subject-matter of this suit, has connected the cause of action against him with that against every other defendant, and has become interested in the subject-matter of the suit itself, and in the vital issue in the case, whether the fund paid to the appellees was taken from the capital or from the profits of the bank. The objection that the bill is multifarious must be overruled.

A single question still requires consideration. According to this bill the defendant Hall was a shareholder of this bank, but not a director or officer thereof, in 1886, and about December 31st in that year he received as a dividend on his stock $120 of the fund which the complainant now seeks to recover. The bill does not show that he ever received any other part of this fund. By the statutes of Nebraska, an action for relief on the ground of fraud is barred in four years after the cause of action accrues, but the cause of action in such a case is not deemed to have accrued until

the discovery of the fraud. An action for the recovery of this $120 on any other ground stated in the bill than fraud is barred in four years from the time the cause of action accrues. Consol. St. Neb. 1891, §§ 4547, 4548, 4552. This suit was commenced on July 6, 1894, more than seven years after defendant Hall received his dividend. He filed a general demurrer to this bill. A general demurrer, in equity, raises the question of the effect of the statute of limitations where the bill discloses facts which show that the analogous cause of action at law is barred by the terms of the statute. Maxwell v. Kennedy, 8 How. 210; Bank v. Carpenter, 101 U. S. 567, 568. It goes without saying that the national courts, sitting in equity, act or refuse to act in analogy to the statute of limitations of the state in which they are sitting, and that, if the analogous action at law against this defendant would be barred under the statutes of Nebraska, this suit must be dismissed as against him. Rugan v. Sabin, 10 U. S. App. 519, 3 C. C. A. 578, and 53 Fed. 415, 420, and cases cited. By the terms of these statutes an action to recover this dividend from the defendant Hall was barred more than two years before this suit was commenced; but the counsel for the complainant seeks to escape from this conclusion on three grounds: First, that the stockholders who received unearned dividends are trustees of an express trust for the creditors of the bank, and the statute of limitations is inoperative against them; second, that the cause of action did not accrue until the fraudulent misappropriation of the dividend was discovered, and the bill alleges that the directors concealed it until the receiver was appointed; and, third, that the cause of action did not accrue until the receiver was appointed, and it was discovered that it was necessary to collect this fund in order to pay the creditors of the bank.

Express trusts are not within the statute of limitations because the possession of the trustee is presumed to be the possession of the cestui que trust. Prevost v. Gratz, 6 Wheat. 481, 497; Lewis v. Hawkins, 23 Wall. 119, 126; Railroad Co. v. Durant, 95 U. S. 576. But lapse of time is as complete a bar to a constructive or implied trust in equity as at law, unless there has been a fraudulent concealment of the cause of action. Speidel v. Henrici, 120 U. S. 377, 386, 7 Sup. Ct. 610; Dole v. Wilson, 39 Minn. 330, 333, 40 N. W. 161; Carroll v. Green, 92 U. S. 509; Streitz v. Hartman, 26 Neb. 33, 49, 41 N. W. 804; Insurance Co. v. Page, 17 B. Mon. 412, 447. The defendant Hall never held the dividend which he received under an express trust to secure the creditors of this bank. He never contracted to hold it for them or for that purpose. He received it as his share of the profits of the business of the bank, and held it as his own. The trust with which it is impressed arises from the fact that it was taken out of the fund held by the bank in trust to pay its creditors. The defendant, who was prima facie its owner, is converted into a trustee by the evidence of this fact, and the trust is an implied or resulting trust, created by operation of law, and not an express trust arising from contract

or privity. The complainant cannot, therefore, escape the bar of the statute on the ground that it is inoperative against an express trust.

Nor can he escape on the ground that the fraudulent misappropriation was not discovered until the receiver of the bank was appointed. We refrain from considering or expressing an opinion upon a case in which a director or stockholder, who knew or ought to have known the financial condition of the bank, aided or permitted the misappropriation of this fund, and then averted suspicion from the true state of facts, and concealed the cause of action by false reports and statements, until that question shall be properly presented by pleadings or proofs. This defendant was not a director. The bill alleges that the directors and some of the defendants knew the condition of the bank, and concealed the cause of action which accrued by the misappropriation of this fund, but it nowhere alleges that this defendant either had knowledge of or concealed these facts. So far as this record shows, he received his dividend in good faith, in the honest belief that he was justly entitled to it. The reason of the rule that the time limited by the statute for the commencement of an action for fraud shall not commence to run while the defendant conceals it is that he ought not to be permitted to take advantage of his own wrong. Neither the reason nor the rule has any application to a cause of action which is fraudulently concealed from the parties in interest by third persons. The fraudulent concealment of the defendant alone will delay the running of the statute. Pratt v. Northam, 5 Mason, 95, 112, Fed. Cas. No. 11,376; Simmons v. Baynard, 30 Fed. 532; Stevenson v. Robinson, 39 Mich. 160. The result is that an action at law to recover this dividend of $120, which was paid to Hall in 1886, would have been barred before this suit was commenced, and by analogy this suit cannot be maintained against him. Nor can it be successfully maintained that the cause of action to recover any part of this fund first arose after the receiver was appointed, and when it was first discovered that the other assets of the bank were insufficient to pay its debts. When the fund was misappropriated, the wrong was done, and the right of recovery was complete. The assets of the bank were then insufficient to pay its creditors, if the allegations of the bill that the bank was then insolvent are true, and unpaid creditors might then have maintained a suit to recover back this fund.

Our conclusion is that, in the state of Nebraska, a suit to recover from an innocent shareholder of a bank an unearned dividend which he has received in good faith, without notice of any fact that would lead a reasonably prudent man to learn that the dividend was not earned, is barred in four years from its receipt. The decree below must be reversed, with costs, and the case must be remanded, with directions to sustain the demurrer of defendant Hall, and to dismiss the bill, as to him, at the costs of complainant, and to permit the other defendants to answer; and it is so ordered.