HAYDEN v. WILLIAMS et al.

(Circuit Court of Appeals, Second Circuit. July 18, 1899.)

No. 51.

1. NATIONAL BANKS—BOOKS OF CORPORATION—SUIT AGAINST STOCKHOLDERS.
    In a suit between the receiver of a national bank and a stockholder the books of the bank are evidence to establish acts of the corporation and its financial condition at a particular time, though not as to dealings between the corporation and the defendant.

2. SAME—STOCKHOLDERS—RECOVERY OF DIVIDENDS RECEIVED AFTER INSOLVENCY.
    The receiver of an insolvent national bank may recover from a stockholder dividends declared and paid after the bank became insolvent, where necessary to meet the demands of creditors.

Appeal from the Circuit Court of the United States for the Southern District of New York.

These are cross appeals from a decree of the circuit court, Southern district of New York, ordering the payment of certain moneys to the

complainant. The defendants appeal from the whole decree. The complainant appeals from it because it did not give him more.

Edward W. Paige, for complainant.

Theodore De Witt, for defendants.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The complainant is the receiver of the Capital National Bank of Lincoln, Neb., which suspended payment in January, 1893, being at that time in a condition of such utter financial rottenness that, although the stockholders have been assessed to the full value of their holdings, its creditors will not receive 75 per cent. of their claims, even if all the assets were collected at their fair valuation, and in addition thereto every dividend which was paid out during the 10 years of the bank's existence were restored to the receiver. The suit was brought to compel the repayment of and accounting for certain dividends paid by the bank above named to the defendants as the holders of capital stock of the bank of the par value of $5,000, on the grounds alleged in the bill, that each of said dividends. was fraudulently declared and paid out of the capital of the bank, and not out of net profits, and that the bank was insolvent when each dividend was declared, and has since remained insolvent. A similar suit was brought against the stockholders resident in Nebraska, and, upon appeal from a decree on demurrers, was sustained by the circuit court of appeals in the Eighth circuit, defendants in that case conceding, by their demurrers, that the bank was insolvent when each dividend was paid. Hayden v. Thompson, 17 C. C. A. 592, 71 Fed. 60. The bank was organized in 1883, with a capital of $100,000, which was increased to $200,000, June 2, 1884, and to $300,000, July 21, 1886. The dividends which were paid from time to time were as follows:

| Date. | Amount Paid in Dividends. | Defendant Received. | Date. | Amount Paid in Dividends. | Defendant Received. |
|---|---|---|---|---|---|
| 1885, Jan. 13 | $15,000 | $187 50 | 1889, Jan. 8 | 18,000 | 300 00 |
| " July 14 | 13,000 | 162 50 | " July 9 | 18,000 | 300 00 |
| 1886, Jan. 12 | 16,000 | 200 00 | 1890, Jan. 14 | 15,000 | 250 00 |
| " July 13 | 14,000 | 175 00 | " July 11 | 15,000 | 250 00 |
| 1887, Jan. 11 | 18,000 | 300 00 | 1891, Jan. 13 | 15,000 | 250 00 |
| " July 12 | 18,000 | 300 00 | " July 13 | 15,000 | 250 00 |
| 1888, Jan. 10 | 18,000 | 300 00 | 1892, Jan. 12 | 15,000 | 250 00 |
| " July 10 | 18,000 | 300 00 | " July 12 | 12,000 | 200 00 |

All dividends except the last were paid to the defendant Williams, a stockholder to the amount of $5,000 from the organization of the bank. The last dividend was paid to defendant Dodd, who bought Williams' stock, and had the same transferred to his own name, December 16, 1891. The circuit court held, following Hayden v. Thompson, supra, that the statute of limitations for an "action upon a contract obligation or liability, express or implied," viz. six years, applied, and limited complainant's recovery to the dividend of January, 1889, and those subsequent thereto. Inasmuch as complainant appellant has submitted no argument criticising this ruling of the circuit court, it need not be discussed here. The defendants interposed answers

*putting in issue the allegations of the bill, and setting forth that they* had received the dividends in good faith and in the ordinary course of business, without notice of the matters alleged in the bill; and pleaded as an equitable discharge the payment to the receiver of an, assessment of 100 per cent. under section 5151 of the Revised Statutes of the United States; also that the matters in the bill are matters which may be tried at law, and for which complainant is not entitled to equitable relief.   The circuit court decreed in favor of the complainant for the dividends received and not barred by the statute of limitations, without interest, viz. $1,850 against Williams, and $200 against defendants jointly.

Before entering upon any discussion of the law of the case, it will be desirable to look into the character of the evidence taken, and to determine what it shows.   The evidence as to financial condition of the bank was found in its books and reports.   The record does not disclose any general offer of all the books to be marked in evidence, but it is quite manifest that they were present at the examination of the expert witnesses, who testified to the results of their investigation of the entries.   The testimony of the witness is frequently interrupted to mark in evidence the volume and page of some entry to which he is referring.   The identity of the books was proved by the cashier and by bookkeepers of the defunct bank and by the receiver. Many of the entries in them were proved by the persons who made them.   So far as the examination of the experts showed, the books were accurate and correct, except when the object and purpose was to conceal shortages and bad debts, and to make a better showing than the real condition of the bank justified.   The receiver was the principal expert witness.   He had prepared tabulations from the books setting forth in convenient collocation the various entries which supported his conclusions, but, whenever challenged upon cross-examination as to any item, he turned at once to the book from which it was taken, and such entry is indicated upon the record here by volume and page.   He testified that the results which he had tabulated and testified to were obtained exclusively from the books, papers, and records of the bank, which were numerous and extensive. He offered to allow counsel for the respondents to examine the books, expressed his entire readiness and willingness to produce them for their inspection, and to point out in them all the data and facts and figures and transactions to which he testified, and to furnish for their use any data arising out of or touching any matter about which he testified, or upon which they might wish to cross-examine him.   The facts, therefore, as to the financial condition of the bank when the successive dividends were paid, were proved by the entries in its books.   And the first question which arises upon this appeal is whether the books themselves were competent evidence, without independent proof of the accuracy of the entries they contained. Counsel for respondent appellants has cited numerous cases to support the proposition that copies of the books are not admissible, being secondary evidence.   But no such question arises in this case. The books themselves were produced, and the various papers objected to and marked as exhibits are the ordinary computations, abstracts,

and summaries which are always admitted for convenience of presentation when the original books containing the items abstracted or summarized are open to the inspection of court and counsel. The only question arising on this branch of the case is whether, when the identity of the books is established, the books "prove themselves." It is stated by the text writers that, as regards the members of a corporation, its books are public books; that they are evidence by way of admissions between members of the corporation.  1 Starkie, Ev. pt. 2, § 120; 1 Phil. Ev. 422, and note 800 in 3 Phil. Ev. 1156, 1157; 2 Phil. Ev. (5th Ed.) p. 295, Cowen & Hill's and Edwards' notes.  There is an important qualification to this rule, however, which is relied upon by respondents, and which will be found expressed in the opinion of this court in Carey v. Williams, 25 C. C. A. 227, 79 Fed. 906, in these words:

"The books and records of corporations, when properly kept, are evidence of the acts and proceedings of the corporate body, but cannot be used to establish claims or rights of the corporation against third persons, unless pursuant to the sanction of some statute, and they are not evidence against a stockholder in respect to a contract entered into by him with the corporation, notwithstanding he has access to them, because as to such contract he is regarded not as a stockholder, but as a stranger."

In that case it was sought to show by the entries in the books of an express company that Williams was a stockholder, and therefore liable for an unpaid balance due on the stock.  In Rudd v. Robinson, 126 N. Y. 113, 26 N. E. 1046, the court said:

"The books of corporations, for many purposes, are evidence, not only as between the corporation and its members, and between members, but also as between the corporation or its members and strangers.  They are received in evidence generally to prove corporate acts of a corporation, such as its incorporation, its list of stockholders, its by-laws, the formal proceedings of its board of directors, and its financial condition when its solvency comes in question.  But we have not been able, after a careful examination of the authorities, * * * to find any case in which it has been decided that the books of account of a corporation are competent evidence, of themselves, to establish an account or claim against a trustee or stockholder in an action brought in behalf of the corporation; and it has been repeatedly said by judges and text writers that they are not competent for that purpose. 'In Whart. Ev. (3d Ed.) § 662, it is said that even in suits against its members its books cannot be used as 'proving,' in behalf of the corporation, self-serving entries. In Ang. & A. Corp. (11th Ed.) § 679, it is said, 'Entries in the books of a corporation of private pecuniary transactions with a stockholder are not admissible against him, when it does not appear by whom the entries were made.' See, also, 2 Wat. Corp. 646."

That in an action between stockholders the books are admissible to show the financial transactions of the corporation, its assets and liabilities, see Hubbell v. Meigs, 50 N. Y. 491.  In Haynes v. Brown, 36 N. H. 545, it was held that the books of a corporation were not admissible against a member of the corporation as evidence of his private transactions or dealings with the company, and that in respect to them he is to be regarded as a stranger.  There is no real discrepancy between the authorities as to the credit to be given to the books of a corporation.  The rules governing their admission have been tersely and correctly stated by complainant's counsel, substantially as follows:  (1) As against a stranger, they are not competent

evidence of any facts stated in them; although the entries in them may, like all other entries, be proved to be correct by human testimony. (2) As between a corporation and its members, and as between the members of a corporation, the books are evidence of what is in them, except the dealings of the corporation with that particular member. (3) As to his own dealings with a corporation, a member of the corporation is considered a stranger, and, as to those dealings, the entries in the books are not evidence against him. In the case at bar the entries in the books which were relied upon by complainant (except as to payment of the dividends and transfer of the stock, neither of which was denied) did not relate at all to any dealings with the defendants or either of them, but solely to acts of the corporation, and to its financial condition at stated periods. The books were, therefore, competent evidence to the extent to which they are relied upon to sustain the judgment. It is not necessary to rehearse the various items of proof from which it appears that, by reason of false entries of credit and of failure to charge off items of loss, the apparent profits out of which dividends were declared did not exist, and that, on the contrary, the financial condition of the bank steadily deteriorated from 1883 till its doors were closed. Suffice it to say that when some of the dividends were paid the capital was impaired, and when other dividends were paid the bank was insolvent.

At the close of the argument it was found that the case presented two questions of law concerning which this court desired the instruction of the supreme court. A certificate was therefore prepared, which briefly rehearsed the facts above set forth, and stated that:

"When the dividend of January 6, 1889, was declared and paid, and when each subsequent dividend down to and including July, 1891, was declared and paid, there were no net profits, the capital of the bank was impaired, and the dividends were paid out of capital, but the bank was still solvent. When the dividends of January and July, 1892, were declared and paid, there were no net profits, the capital of the bank was lost, and the bank actually insolvent."

The two following questions were submitted, upon the facts set forth:

"(1) Can the receiver of a national bank recover a dividend paid not at all out of profits, but entirely out of capital, when the stockholder receiving such dividend acted in entire good faith, believing the same to be paid out of profits, and when the bank at the time such dividend was declared and paid was not insolvent? (2) Has a United States circuit court jurisdiction to entertain a bill in equity brought by a receiver of a national bank against stockholders to recover dividends which, it is claimed, were improperly paid, when such suit is brought against two or more stockholders and embraces two or more dividends, and when the objection that there is an adequate remedy at law is raised by the answer?"

No question was propounded as to the dividends paid when the bank was actually insolvent, as we had no doubt the receiver could recover them in a proper action. The supreme court answered the first of these questions in the negative, but did not answer the second question at all, on the expressed ground that it was thought "unnecessary to answer it in order to enable the court below to proceed to judgment in the case." This disposition of the certified questions leaves this court in some perplexity as to the disposition to

be made of the case. Complainant, in our opinion, is clearly entitled to recover, in some form of action, for the January, 1892, dividend ($250) paid to Williams, and the July, 1892, dividend ($200) paid to Dodd, since the bank was actually insolvent when both these dividends, were declared and paid. Indeed, the opinion of the supreme court intimates that such payment during insolvency may be recovered back. But can it be recovered by suit in equity such as this? On this point we are still uncertain, and the views of the several members of the court are not harmonious. Without discussing the point, and with the caution that this decision is not to be taken as authority thereupon, the proper course would seem to be to proceed to judgment, as indicated in the opinion of the supreme court, against the complainant for the years when the bank was still solvent, and against the defendants for the dividends paid during insolvency. Inasmuch as a negative answer to the second question would have disposed of the whole case, we may assume that in declining to answer it the supreme court assumed we would so dispose of the case as to give complainant a decree for part of his claim. The decree of the circuit court is reversed, and cause remanded, with instructions to decree in conformity with this opinion, without interest or costs.